David W. NOELL, Individually and as Limited Partner in Crow–Billingsley Air Park Limited Partnership, Appellant,

v.

**CROW–BILLINGSLEY AIR PARK LIMITED PARTNERSHIP,**
Appellee.

No. 05–06–00889–CV.

Court of Appeals of Texas, Dallas.

July 12, 2007.

Rehearing Overruled Oct. 1, 2007.

Marty D. Price, Dallas, TX, Daniel B. Jones, Plano, TX, for Appellant.

Tod B. Edel, David Anderson, Carrington Coleman Sloman & Blumenthal, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

David Noell appeals the summary judgment rendered in favor of Crow–Billingsley Air Park Limited Partnership in this suit on a promissory note. The trial court awarded appellee judgment against appellant for principal of $180,000, plus interest and attorney's fees. Appellant brings nine issues asserting the trial court erred in granting summary judgment because (a) appellee and its general partner breached their fiduciary duties to appellant, (b) fact issues exist on appellant's defenses, and (c) the trial court erred in striking portions of appellant's summary judgment evidence. Appellant also contends the trial court erred in severing the suit on the promissory note from the remaining litigation and in denying appellant's motion for new trial based on newly discovered evidence. We affirm the trial court's judgment.

## BACKGROUND

In 1965, appellant and his father, Milton Noell, formed a partnership, Air Park Associates, to develop certain real estate (the property) as a residential community with its own aircraft landing strip and aircraft facilities. In 1982, appellant purchased two lots on the property, lots 33 and 34, which had a residence built on them.

### The Partnership

In 1983, Milton Noell brought in Henry Billingsley as an investor. The record before us indicates that on July 1, 1983, appellant, Milton Noell, and Billingsley restructured the ownership of the property so that it would be owned by appellee, a limited partnership in which Billingsley had a fifty percent general-partner interest and Milton Noell had a fifty percent limited-partner interest. The following transactions gave appellee title to the property: (a) appellant sold lots 33 and 34 to Milton Noell for $190,000; (b) Milton Noell transferred a half-interest in the property to Billingsley; (c) Billingsley and Milton Noel transferred their interests in the property to appellee; and (d) appellee leased the property to appellant. Thus, on July 1, 1983, appellee owned the property, Billingsley was the general partner of appellee, Milton Noell was the limited partner of appellee, appellant was the lessee of the property, and appellant had $190,000 from the sale of the lots to Milton Noell.

In December 1983, Milton Noell transferred his limited partnership interest in appellee to Air Park Properties Limited, a limited partnership with Milton Noell as general partner, and appellant, appellant's brother, and two trusts as limited partners. Milton Noell died in 1990. After that, it appears Air Park Properties Limited was no longer a limited partner of appellee. Instead, the summary judgment evidence shows appellant and his brother

were limited partners of appellee with each having a twenty-five percent limited-partner interest.

In 2000, the general partner of appellee became Air Park GP, L.L.C., to which Billingsley assigned a one percent general-partner interest. Billingsley then converted the remaining forty-nine percent of his general-partner interest to a limited-partner interest. Billingsley then acquired appellant's brother's twenty-five percent limited-partner interest. Thus, at the end of 2000, the general partner of appellee was Air Park GP, L.L.C. with a one percent general-partner interest and the limited partners were Billingsley with a seventy-four percent limited-partner interest and appellant with a twenty-five percent limited-partner interest.

### The Promissory Note

In 1985, appellant was facing a significant capital-gains tax obligation from the July 1, 1983 sale of the lots to his father. To avoid that tax obligation, appellant needed to reinvest the $190,000 in a residence. Appellant approached Billingsley, appellee's general partner, about his problem, and they agreed that appellant would repurchase lots 33 and 34 from appellee for $190,000. Appellant's attorney and the title company prepared the documents and sent them to appellee's attorney for his approval. The documents consisted of the deed drafted by the title company and a promissory note, option agreement, and memorandum of option drafted by appellant's attorney.[1] On June 28, 1985, appellant paid appellee $10,000 and signed a promissory note for $180,000 payable to appellee. The note was due in fifteen years. The note stated it was "given in part payment for" lots 33 and 34 "this day conveyed to the undersigned [appellant] by

a General Warranty Deed of even date herewith." Billingsley signed a general warranty deed on behalf of appellee transferring lots 33 and 34 to appellant. According to appellant, Billingsley kept the original of the deed and gave appellant a copy. The deed was not filed until 2005. Appellant did not pay any of the principal or interest due under the note.

### The Litigation

In 2004, the relationship between appellant and Billingsley deteriorated, and appellee terminated the lease of the property. Appellant sued Billingsley, appellee, and other entities over matters relating to the operation of appellee, for an accounting and dissolution of appellee, and concerning the termination of the lease. In November 2004, appellee filed a supplemental counterclaim against appellant alleging breach of the promissory note. Appellant answered, asserting various defenses, including breach of fiduciary duty, failure of consideration, usury, estoppel, and that the parties had a side agreement that the note would not be enforced. Appellee moved for partial summary judgment on the promissory note portion of the litigation. The trial court heard the motion on February 25, 2005 and granted the motion on May 12, 2005. On March 10, 2006, the trial court severed the promissory note case from the rest of the litigation and, on April 5, 2006, rendered a final judgment on the promissory note case. Appellant filed a notice of appeal in the promissory note case, and the remainder of the litigation remains pending in the trial court.

### STANDARD OF REVIEW

We review the grant of summary judgment de novo. *Tittizer v. Union Gas*

---

1. No signed option agreement is in the record, but an unsigned draft of the option agreement is in the record. The memorandum of option is also not in the record.

*Corp.*, 171 S.W.3d 857, 860 (Tex.2005). The standard for reviewing a motion for summary judgment under rule 166a(c) is well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The movant has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex.1999); *Troxel v. Bishop*, 201 S.W.3d 290, 296 (Tex.App.-Dallas 2006, no pet.). When reviewing a summary judgment, we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Diversicare Gen. Partner, Inc.*, 185 S.W.3d at 846; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, No. 04–0993, 236 S.W.3d 754, 755, 2007 WL 1713400, at *1 (Tex. June 15, 2007) (per curiam); *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex.2006) (per curiam).

## THE SUMMARY JUDGMENT RECORD

The record on summary judgment consists of "(i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties and authenticated or certified public records, if any on file at the time of the hearing, or filed thereafter and before judgment with permission of the court."

TEX.R. CIV. P. 166a(c). The movant for summary judgment may include in the summary judgment record discovery products not on file

> if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs ... at least twenty-one days before the hearing. . . .

TEX.R. CIV. P. 166a(d).

In this case, on October 18, 2006, after the final judgment was rendered, appellee filed notice of certain documents and refers to these documents as summary judgment evidence. Appellee also cites as summary judgment evidence the exhibits attached to appellant's motion for new trial and to appellee's response to the motion for new trial. The record does not show these documents were before the court when it heard appellee's motion for partial summary judgment, nor does the record show the court permitted the summary judgment record to be supplemented with these materials. Accordingly, these documents are not part of the summary judgment record, and we do not consider them in determining whether the trial court properly granted summary judgment on appellee's suit on the promissory note. *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 720–21 (Tex.App.-Dallas 1995, no writ).

## BREACH OF FIDUCIARY DUTY

In his first and second issues, appellant asserts the trial court erred in granting appellee's motion for summary judgment because genuine issues of material fact exist concerning the enforceability of the note and concerning appellant's affirmative

defense to liability on the note, breach of fiduciary duty.

Appellant asserts the note is unenforceable due to breaches of fiduciary duty by Billingsley and appellee. The term "fiduciary" generally applies "to any person who occupies a position of peculiar confidence towards another," refers to "integrity and fidelity," and contemplates "fair dealing and good faith." *Dunnagan v. Watson,* 204 S.W.3d 30, 46 (Tex.App.-Fort Worth 2006, pet. denied) (quoting *Daniel v. Falcon Interest Realty Corp.,* 190 S.W.3d 177, 185 (Tex.App.-Houston [1st Dist.] 2005, no pet.)). Fiduciary duties arise as a matter of law in certain formal relationships, including the relationships between partners. *Id.* (citing *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998)). Certain informal relationships may also give rise to a fiduciary duty. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 287 (Tex.1998). Informal fiduciary relationships arise from "a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Id.* The law recognizes confidential relationships in which "influence has been acquired and abused, confidence has been reposed and betrayed." *Id.* (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992)). This fiduciary duty is not created lightly, however. *Id.* "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* at 288.

Appellant asserts the existence of a fiduciary relationship between himself and Billingsley, and he argues that Billingsley's breach of his fiduciary duties owed to appellant precluded the granting of a summary judgment on the note. We disagree. Billingsley is not a party to the note, nor is he a party to the promissory note case. Any breach of fiduciary duty by him is not relevant to this case.

Appellant also appears to assert that a formal fiduciary relationship existed between himself and appellee because he is a limited partner in appellee. When appellant signed the note, he had no direct interest in appellee. In 1985, appellant was a limited partner in Air Park Properties, Limited; it was Air Park Properties, Limited, not appellant, that had a limited partnership interest in appellee. No relationship based on partnership could have existed between appellant and appellee until appellant became a limited partner, which did not occur until 1990, five years after appellant signed the note. Appellant cites several cases for the proposition that general partners owe fiduciary duties to the partnership and to other partners, including limited partners, but appellant cites no authority showing that the limited partnership itself is the fiduciary of the limited partners. Because appellant has not shown appellee owed appellant any fiduciary duty, appellant has not presented evidence raising a genuine issue of material fact that appellee breached any fiduciary duty to appellant.

We conclude appellant has not shown his affirmative defense of breach of fiduciary duty barred the granting of appellee's motion for summary judgment.[2] We overrule appellant's first and second issues.

---

2. Breach of fiduciary duty by appellee and Billingsley is among the issues remaining in the litigation pending below. In this case, we hold only that appellant failed to show that appellee owed him a fiduciary duty. We do not hold that no fiduciary duty may exist between the parties.

### DELIVERY OF THE DEED

■ In his third, fourth, fifth, and seventh issues, appellant contends his affirmative defenses of conditional delivery of the note or delivery for a specific purpose and lack of consideration bar enforcement of the note. He also asserts enforcement is barred because the note was an executory contract. A common element of each of these defenses was lack of delivery of the original deed for the lots to appellant.[3]

■ Conveyance by deed requires delivery of the deed. TEX. PROP.CODE ANN. § 5.021 (Vernon 2004); *Troxel,* 201 S.W.3d at 297. Delivery of a deed has two elements: (1) the grantor must place the deed within the control of the grantee (2) with the intention that the instrument become operative as a conveyance. *Steffian v. Milmo Nat'l Bank,* 69 Tex. 513, 518, 6 S.W. 823, 824 (1888), *quoted in Binford v. Snyder,* 144 Tex. 134, 143–44, 189 S.W.2d 471, 475 (1945); *Bellaire Kirkpatrick Joint Venture v. Loots,* 826 S.W.2d 205, 213 (Tex.App.-Fort Worth 1992, no writ). The question of delivery of the deed is controlled by the intent of the grantor, and it is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument. *Troxel,* 201 S.W.3d at 297. Appellant, as the party asserting an affirmative defense to the note, had the burden of presenting some evidence of the lack of delivery, that is, some evidence that appellee did not place the deed within appellant's control with the intent that the deed become operative. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984) (party opposing summary judgment by relying on affirmative defense must come forward with evidence sufficient to raise fact issue

on each element of defense); *Sani v. Powell,* 153 S.W.3d 736, 740 (Tex.App.-Dallas 2005, pet. denied) (citing *Brownlee* ).

■ Appellant relies on the following statements in his affidavit to prove lack of delivery:

> While I signed the original note, I have seen a copy of the note and Henry gave me a copy of the deed.... I have never even seen the original deed.

> I met Henry Billingsley at his offices and he gave me the original note to sign. I signed the note and handed it to Billingsley on the condition and believing that I would receive a deed. I trusted Billingsley. I never received a deed.

The fact that appellant never saw or physically touched the deed does not mean there was not delivery of the deed. "Manual delivery of a deed to the grantee or his agent is not required to effect delivery." *DeGrassi v. DeGrassi,* 533 S.W.2d 81, 85–86 (Tex.Civ.App.-Amarillo 1976, writ ref'd n.r.e.); *see Tyler v. Bauguss,* 148 S.W.2d 912, 917 (Tex.Civ.App.-Dallas 1941, writ dism'd judgm't cor.) (grantor's retention of original deed and delivery to grantee of carbon copy of deed sufficient to convey property). The note states the lots were conveyed to appellant by general warranty deed. Appellant's affidavit does not contradict the statement in the note. Appellant's affidavit does not state appellee never placed the deed within appellant's control or that appellee did not intend the deed to operate as a conveyance. Although appellant testified he received a copy of the deed, he did not testify there was no delivery or acceptance of the original deed, that his receipt of the copy instead of the original of the deed was con-

---

**3.** Appellant asserts he delivered the note for the specific purpose or on the condition that he would be delivered the original deed, there was failure of consideration due to the lack of

delivery of the deed, and the note remained an executory contract because appellee had not delivered the deed to appellant.

trary to his intentions, that Billingsley's retention of the original deed was without appellant's permission, or any other facts showing the deed was not placed in appellant's control. Moreover, appellant testified in his affidavit that he used the copy of the deed to establish the lots as his homestead.

That appellee intended to pass title to the lots to appellant is shown by Billingsley's deposition where, after the note went into default, Billingsley asked appellant if he wanted "to deed the house and the lots back." If appellee had not intended for title to pass to appellant in 1985, there would have been no need for appellant to deed the property back to appellee. Appellant also cites to Billingsley's deposition testimony in support of his argument that Billingsley did not intend for the deed to operate as a conveyance. In his deposition taken in 2005, Billingsley testified,

Q. . . . Well, let me ask you this: If Mr. Noell wanted those properties today and he wanted record title to them, would you give him a deed?

A. Thirty-three and thirty-four?

Q. Yes.

A. He owns them.

Q. No. But if he wanted a deed to record at the courthouse to show that he had record legal title, would you be willing to give him a deed?

A. Sure.

Q. All right. And the reason—

A. Assuming that he pays off the note. I mean, this isn't free.

Q. Pardon?

A. I'm assuming he pays off the note for it. I mean, this isn't just free.

Q. What do you mean it isn't free?

A. I mean, we've got a note and I'm assuming the note's paid and if the note is paid, he owns the lots.

Q. All right. So you wouldn't be willing to give him the deed unless he paid off the note?

A. I would think that that would probably be reasonable.

Q. All right.

A. Otherwise it would be a gift, I assume.

Appellant argues that this testimony shows there was no delivery of the deed. We disagree. Billingsley testified appellant "owns them," i.e., the lots, which shows Billingsley, as appellee's general partner in 1985, believed the 1985 transaction passed title to appellant. The fact that Billingsley refused to deliver a second deed to appellant in 2005 when the note was in default and appellant had sued Billingsley and appellee for breach of fiduciary duty does not show appellee did not intend in 1985 for title to pass to appellant.

Appellant's statements in his affidavit that he did not see the deed and that he "never received the deed" is evidence that appellant left the closing of the transaction without the original deed in his physical possession; but physical possession of the deed is not the test for "delivery." Appellant's statements are not evidence that appellee failed to place the deed in appellant's control or that appellee did not intend for the deed to operate as a conveyance. Accordingly, these statements are not evidence of lack of delivery of the deed.

Appellant also asserts the deed was not delivered because it was not recorded.[4] Recording a deed is not necessary to pass title; an unrecorded deed is binding on the parties to the conveyance. TEX. PROP.CODE

4. A copy of the deed was recorded, but only after the entry of the summary judgment. Thus, the evidence of its recording is not part of the summary judgment evidence.

ANN. § 13.001(b) (Vernon 2004); *Cowden v. Bell,* 293 S.W.2d 611, 613 (Tex.Civ.App.-San Antonio 1956), *aff'd,* 157 Tex. 44, 300 S.W.2d 286 (1957).

■ We conclude appellant has failed to present evidence raising a genuine issue of material fact that the deed was not delivered to appellant. Accordingly, appellant's asserted affirmative defenses of conditional delivery or delivery for a specific purpose, failure of consideration,[5] and that the note was an executory contract do not bar entry of summary judgment for appellee. We overrule appellant's third, fourth, fifth, and seventh issues.

## SUMMARY JUDGMENT EVIDENCE

■ In his sixth issue, appellant contends the trial court erred in sustaining appellee's objections to and striking portions of appellant's affidavits. Appellant sought to introduce evidence that he and appellee had agreed that appellee would eventually take the lots back from appellant and that they had agreed the note would be held by Billingsley until appellee repurchased the lots from appellant. The stricken statements from appellants' affidavits would also have shown that the parties had signed an option agreement for appellee's repurchase of the property in which the cost of the option was equal to the interest accruing under the note. Appellant asserts this evidence would show he was not liable on the note. Appellee objected to this evidence as violating the statute of frauds and the rule against parol evidence. The trial court sustained appellee's objections and struck the evidence from the summary judgment record.

■ The parol evidence rule excludes evidence of a representation by the payee of a promissory note that the maker would not be liable on the note. *Town N. Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 491–92 (Tex.1978); *Peters v. Gifford–Hill Co.,* 794 S.W.2d 856, 862 (Tex.App.-Dallas 1990, writ denied). The only exception to this rule is the existence of trickery or artifice to induce the execution of the instrument. *Id.* In this case, appellant presents no evidence that he was induced to sign through appellee's trickery or artifice. Appellant approached Billingsley about the tax issue, appellant was represented by counsel throughout the transaction, and appellant's attorney prepared the documents.

■ Appellant asserts that in an action by a holder who is not a holder in due course, "extrinsic evidence is always admissible to show a want or failure of consideration, non-performance of a condition precedent, non-delivery, delivery for specific purpose, fraud, and all other defenses that would be available on a simple contract." Appellant's only citation of authority for this statement is section 3.306(2), (3) of the business and commerce code, which does not exist,[6] and section 3.307,

---

5. Other evidence shows appellant received additional consideration for the note. Consideration is defined as either a benefit to the promisor or a loss or detriment to the promisee. *N. Natural Gas Co. v. Conoco, Inc.,* 986 S.W.2d 603, 607 (Tex.1998). Appellant, the promisor, entered into the transaction to obtain the benefit of avoidance of the capital gains tax on the sale of his residence to his father. The tax benefit constituted additional consideration for the note.

6. Section 3.306 of the business and commerce code contains no subdivisions. That section states,

 A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

which concerns notice of breach of fiduciary duty and that is not at issue in this case. *See* Tex. Bus. & Com.Code Ann. §§ 3.306, .307 (Vernon 2002). Accordingly, this argument lacks supporting authority and is waived. *See* Tex.R.App. P. 38.1(h); *Okere v. Chase Manhattan Mortgage Corp.*, 191 S.W.3d 910, 912 (Tex.App.-Dallas 2006, no pet.); *Dallas Firefighters Ass'n v. Booth Research Group, Inc.*, 156 S.W.3d 188, 196 (Tex.App.-Dallas 2005, pet. denied).

Appellant also argues that when a fiduciary duty exists, the parol evidence rule and statute of frauds are inapplicable and allow extrinsic evidence related to the fairness of the transaction. However, as discussed above, appellant failed to raise a genuine issue of material fact on whether appellee was appellant's fiduciary when appellant signed the note. Thus, appellant is not entitled to introduce extrinsic evidence regarding the fairness of the transaction.

We overrule appellant's sixth issue.

## SEVERANCE

 In the eighth issue, appellant asserts the trial court erred in severing the litigation on the promissory note from the litigation on appellant's other claims. We do not reverse the trial court's ruling on a motion for severance unless the record shows the court abused its discretion. *Arredondo v. City of Dallas*, 79 S.W.3d 657, 665 (Tex.App.-Dallas 2002, pet. denied). Rule of civil procedure 41 states, "Any claim against a party may be severed and proceeded with separately." Tex.R. Civ. P. 41. A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience. *Id.*

The entire litigation involves many causes of action, and the promissory note claim is one that would be the proper subject of an independent lawsuit. Appellant asserts the promissory note cause of action is so interwoven with the remaining litigation that they involve the same facts and issues. We disagree. The litigation pending below concerns the management of appellee and requests for an accounting and dissolution of appellee. Appellant argues the promissory note case is interwoven with the suit for an accounting and dissolution because any amounts appellant owed to appellee under the note would affect the property distribution or compensation due appellant as a partner for the value of his limited partnership interest. The issue of how appellant's liability on the promissory note would affect his partnership interest is a separate issue from that before us in this case, namely, whether appellant is liable on the promissory note. How appellant will pay his liability is a separate issue and is not interwoven with the facts and issues before us. Appellant also asserts the facts and issues are interwoven because both cases involve breach of fiduciary duty by appellee. However, the acts alleged to have breached the fiduciary duty in the promissory note case are different from the acts alleged in the remaining litigation.

We conclude the promissory note case is not so interwoven with the remaining litigation that granting the motion to sever constituted an abuse of discretion. We

Tex. Bus. & Com.Code Ann. § 3.306 (Vernon 2002). This provision does not involve the defenses appellant asserts are exceptions to the rule prohibiting parol evidence.

hold the trial court did not err in granting the motion for severance. We overrule appellant's eighth issue.

## MOTION FOR NEW TRIAL

 In his ninth issue, appellant asserts the trial court erred in denying his motion for new trial. We review the denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex.2006) (per curiam); *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex.App.-Dallas 2005, no pet.). Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *El Dorado Motors, Inc.*, 168 S.W.3d at 368. Every reasonable presumption will be made on review in favor of the trial court's refusal of a new trial. *Id.* Review of a trial court's action under the abuse of discretion standard is a question of law. *Id.* When a motion for new trial is based on newly discovered evidence, the movant must establish that (1) the evidence has come to his knowledge since the trial, (2) it was not owing to want of due diligence that the evidence did not come to his attention sooner, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Johnson v. Legacy Bank*, 167 S.W.3d 643, 645–46 (Tex.App.-Dallas 2005, no pet.).

The new evidence on which appellant relies is that on October 28, 2005, five months after the trial court granted the motion for summary judgment, appellee filed a copy of the deed in the real property records office attached to an affidavit executed by Billingsley. Because the event did not occur until after the granting of the motion for summary judgment, the first and second elements for a new trial

based on newly discovered evidence are met. Because the evidence is not cumulative, the third element is also met. Accordingly, we must determine whether the evidence is so material that it would probably produce a different result if a new trial were granted.

Appellant asserts the evidence that Billingsley filed the deed in the real property records office in October 2005 constitutes some evidence that appellee never delivered title to the lots to appellant until October 2005. We disagree. As discussed above, the fact that appellant allowed the deed to remain in Billingsley's and appellee's possession does not mean there was no delivery of the deed to appellant. Furthermore, recording a deed is not necessary to pass title; an unrecorded deed is binding on the parties to the conveyance. TEX. PROP.CODE ANN. § 13.001(b); *Cowden*, 293 S.W.2d at 613. The recording of a copy of the deed in 2005 is not evidence there was no delivery of the deed in 1985.

We conclude the new evidence is not so material that it would probably produce a different result if a new trial were granted. We hold the trial court did not abuse its discretion in overruling appellant's motion for new trial. We overrule appellant's ninth issue.

We affirm the trial court's judgment.